IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| and | ) | |
| THE STATE OF OKLAHOMA, | ) | |
| Plaintiffs, | ) | |
| v. | ) | Civil Action No. 06-887C |
| UNION PACIFIC RAILROAD COMPANY et al. | ) | Judge Robin J. Cauthron |
| Defendants. | ) | |

**MEMORANDUM FOR THE PLAINTIFFS**
**IN SUPPORT OF THE UNOPPOSED MOTION TO ENTER**
**THE PROPOSED CONSENT DECREE**

## I. PRELIMINARY STATEMENT AND SUMMARY

On October 8, 2010, the United States and State of Oklahoma ("Plaintiffs"), lodged with this Court a proposed Consent Decree which resolves claims raised in the Complaint filed on August 22, 2006, under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601 *et seq*., against Union Pacific Railroad Company ("Union Pacific"), a former owner of the Double Eagle Refinery Superfund Site (the "Site") in Oklahoma City, Oklahoma. The proposed Consent Decree also resolves claims against 276 additional defendants named in the Amended Complaint filed on October 8, 2010, for their potential liability as arrangers for disposal of hazardous substances under CERCLA Section 107(a)(3), 42 U.S.C. §§ 9607(a)(3). The additional defendants negotiated solely with Union Pacific to resolve potential contribution claims Union Pacific may have against such additional defendants. Having resolved potential contribution claims with Union Pacific, the additional defendants agreed to be named as defendants in the Amended Complaint. Further, the proposed Consent Decree resolves counterclaims brought by Union Pacific against Plaintiffs.

Consistent with 28 C.F.R. § 50.7 and Section XV of the proposed Consent Decree, the proposed Consent Decree was expressly conditioned upon a public comment procedure.

Public notice of the Consent Decree was published in the Federal Register on October 18, 2010. *See* 75 Fed. Reg. 63859 (October 18, 2010). More than thirty days have elapsed since the publication of the notice and the United States did not receive any

comments on the proposed Consent Decree. Further, paragraph 42 provides that the settling defendants agree to not oppose or challenge entry of the proposed Consent Decree.  The proposed Consent Decree is fair, reasonable and consistent with the goals of CERCLA, as set forth below.  Therefore, the proposed Consent Decree and this motion are unopposed.  Accordingly, United States respectfully requests that the Court enter the proposed Consent Decree by signing page 23 of the Consent Decree found as an attachment to Docket No. 720.

## II. BACKGROUND

### A. CLAIMS at ISSUE

On August 22, 2006, the United States filed a cost recovery action, under Section 107 of CERCLA, 42 U.S.C. § 9607, against Union Pacific as a merger successor to a former owner of the Double Eagle Refinery Superfund Site (the "Site") in Oklahoma City, Oklahoma, case number 5:06-cv-00887-C.  Specifically, the Plaintiffs seek unrecovered past response costs incurred at the Site by EPA, damages to the natural resources, and a declaratory judgment for future response costs. Union Pacific alleged twenty-four affirmative defenses and several counterclaims seeking contribution against Plaintiffs.  As part of settlement negotiations between Union Pacific and the additional defendants to resolve Union Pacific's potential contributions claims; the Plaintiffs, Union Pacific and the additional defendants agreed that the additional defendants would be named in the Plaintiffs' Amended Complaint.  Therefore, Plaintiffs filed their Amended Complaint on October 8, 2010.

The Site is a former waste oil re-refinery. EPA conducted removal activities at the Site in the 1990s. The United States' total unrecovered response costs for this Site now total approximately $30 million, including accrued interest. The State, as Co-Plaintiff, joined in the Complaint and Amended Complaint and seeks to recover approximately $1.2 million in past response costs, as well as natural resource damages ("NRD"). The federal and state natural resources trustees estimated in settlement discussions that total unreimbursed NRD at the Site are approximately $1 million.

**B. SITE SETTLEMENT HISTORY and PROPOSED CONSENT DECREE**

1. Earlier Settlements and Payment of Past Response Costs

The Plaintiffs have entered several *de minimis* settlement agreements for the Site with other potentially responsible parties ("PRPs").[1] A proposed consent decree in the *United States v. Albert Investments Co. et al*, civil action no. 08-637-C, is also pending before this court (Albert Consent Decree). Union Pacific is an intervenor in that matter, but pursuant to the terms of this settlement, does not oppose entry of that consent decree.

2. The Proposed Consent Decree between Plaintiffs and Union Pacific

The Plaintiffs and Union Pacific participated in mediation sessions in December 2008 and in December 2009. Subsequent to the 2009 session, the Parties continued to negotiate, and ultimately reached a settlement agreement. In addition to the payment of past response costs and natural resource damages being made by Union Pacific, Union

[1] In 2002, a de minimis settlement was entered, recovering approximately $3 million. Settlements with 3M Company for $50,000 and BNSF Railway Company for $300,000 were entered by this Court in civil action numbers 5:07-cv-01079-C and 5:07-cv-01080-C, respectively.

Pacific agreed to drop its objection to the Albert Consent Decree.[2] Also, the settlement includes a number of PRPs, some of which were party to this action, and others that settled with Union Pacific prior to being brought into the suit. These PRPs paid funds to Union Pacific that will go towards the settlement. The United States amended its Complaint to include these parties as defendants so that they could be bound by the Consent Decree and receive the covenants and protections offered in the proposed Consent Decree. The Plaintiffs agreed to include the additional defendants, and amended the Complaint accordingly.

The proposed Consent Decree is cost recovery only because EPA has already cleaned up the Site – therefore nothing in the proposed Consent Decree requires any settling defendant to perform clean-up activities at the Site. Under the proposed Consent Decree, Union Pacific, on behalf of all settling defendants, shall pay $13,606,241 to the Plaintiffs in reimbursement of past response costs, $160,000 in future response costs and $450,000 in state and federal natural resource damages to resolve its liability as a past owner of the Site under Section 107 of CERCLA, 42 U.S.C. §9607(a)(2). § V. ¶¶ 4, 10. The federal PRPs, through the judgment fund and the United States Postal Service are paying $384,844 in reimbursement of past response costs. § V. ¶ 8. In return, Settling Defendants and the federal PRPs receive a specific covenant not to sue for past or future response costs pursuant to Sections 107(a) and 113 of CERCLA and contribution protection pursuant to Section 122(g)(2) and (5) of CERCLA, 42 U.S.C. §9622 (g)(2) and (5). §§ VII.¶¶ 18, 19, 20, and 21. The covenant not to sue is subject to the Plaintiffs

[2] The Albert Consent Decree is a separate consent decree negotiated between the United States and generators at the Site and is also pending entry by this court.

reservation of rights which provides a reopener for unknown conditions that may arise at the Site requiring additional remedial actions. § VIII. ¶ 22. It also reserves the Plaintiffs' right to bring suit for (1) failure to meet the terms of the Consent Decree, (2) ownership or operation of the Site after signature of the consent decree, (3) CERCLA liability that may occur after the consent decree is entered, (4) criminal liability and for (5) potential CERLCA liability outside of the Site. § VIII. ¶ 23. The Settling Defendants, as of date of entry of the proposed Consent Decree, are entitled to protection from contribution actions or claims as provided by Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2) for "matters addressed," which include "all response actions taken or to be taken and all response costs incurred or to be incurred, at or in connection with the Site, by the United States or any other person" . . . unless the Plaintiffs exercise their right to sue under the reservations in Section VIII. § X. ¶ 29. Paragraph 40 provides that should the Court decline to enter the proposed Consent Decree, or the Albert Consent Decree (lodged in United States et al. v. Albert Inv. Co., et al., Case No. 08-CV-637-C (W.D. Okla.)), the agreement is voidable at the sole discretion of any party. § XV. ¶ 40. Finally, the Court retains jurisdiction of this matter to interpret and enforce the terms of the Consent Decree. § XIII.

## III. LEGAL AUTHORITIES

### A. Scope of Review

Entry of a consent decree is a judicial act that requires approval by a court. *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *accord*

*Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984). After reviewing the settlement, "the district court is faced with the option of either approving or denying the decree." *United States v. Colorado*, 937 F.2d 505, 509 (10th Cir. 1991). The court is "not to substitute [its] judgment of what constitutes an appropriate settlement or to reform the decree." *United States v. Telluride Co.*, 849 F. Supp. 1400, 1402 (D. Colo. 1994). A measure of deference to the terms agreed to by the parties is therefore appropriate in the Court's review of the Consent Decree.

The Court's discretion in reviewing and approving settlements should also be exercised to further the strong public policy favoring the voluntary settlement of litigation. *Id.*; *see also Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) (settlements of disputes clearly in the public interest). Both the parties and the public "benefit from the saving of time and money that result from the voluntary settlement of litigation." *Citizens for a Better Environment v. Gorsuch*, 718 F.2d 1117, 1126 (D.C. Cir. 1983); *see also S.E.C. v. Randolph*, 736 F.2d 525, 528 (9th Cir. 1984) (use of settlement agreements "encourages informal resolution of disputes, thereby lessening the risks and costs of litigation").

**B. Standard of Review**

Entry of a CERCLA settlement is committed to the sound discretion of the court. *United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 84 (1st Cir.1990); *United States v. Union Elec. Co.*, 132 F.3d 422, 430 (8th Cir. 1997); *United States v. Davis*, 261 F.3d 1, 21 (1st Cir.2001); *United States v. Hooker Chem. & Plastics Corp.*, 776 F.2d 410, 411 (2d Cir. 1985). A court must review a proposed settlement to determine whether it

represents a resolution that is fair, reasonable, and consistent with the public interest. *See Union Electric*, 132 F.3d at 430; *United States v. Jones & Laughlin Steel Corp.*, 804 F.2d 348, 351 (6th Cir. 1986); *Davis*, 261 F.3d at 20. The settlement must also further the objectives of the statute. *United States v. Akzo Coatings of Am., Inc.*, 949 F.2d 1409, 1424 (6th Cir. 1991).

The Court's discretion is tempered with deference to the government's expertise in the specialized environmental field. *Davis*, 261 F.3d at 21. Accordingly, there is a strong presumption that the agencies are acting in the public's interest in favor of settlement when the Department of Justice negotiates a deal on behalf of a federal agency in the environmental field. *Akzo Coatings*, 949 F.2d at 1426. In determining whether a settlement is fair, reasonable, and adequate to protect the public interest, the court must not rubberstamp the agreement, but also must not substitute its own judgment for that of the parties to the decree. *Id*. at 1435; *accord In re Tutu Water Wells CERCLA Litig.*, 326 F.3d 201, 207 (3d Cir. 2003); *Davis*, 261 F.2d at 21.

As discussed below, the proposed Consent Decree is fair, reasonable and consistent with the goals of CERCLA, and should be approved. As of the date of the filing of this motion and memorandum the proposed Consent Decree is unopposed, in as much as no comments were received during the public comment period.

## IV.     THE PROPOSED CONSENT DECREE IS FAIR, REASONABLE AND CONSISTENT WITH THE GOALS OF CERCLA

The proposed Consent Decree meets the three-part test for approval of a settlement: the settlement is fair, reasonable, and furthers the goals of CERCLA and is in the public interest.

### A.  The Proposed Consent Decree is Fair.

Consent decrees should be evaluated for both their procedural and substantive fairness. *Cannons*, 899 F.2d at 86. Procedural fairness addresses the fairness of the negotiation process. *Id.* "Procedural fairness requires that the parties to the decree conduct their negotiations forthrightly to achieve a bargained for resolution to the suit." *United States v. Atlas Minerals & Chemicals, Inc.*, 851 F. Supp. 639, 653 (E.D. Pa. 1994). Procedural fairness also requires that the parties to a Consent Decree must have "negotiated at arm's length." *Cannons*, 899 F.2d at 87; *see also U.S. v. Kramer*, 19 F. Supp.2d 273, 283-84 (D.N.J. 1998). Substantive fairness addresses matters of corrective justice and accountability. *Cannons*, 899 F.2d at 87. To assess substantive fairness, courts determine whether the estimates of responsibility and damages correlate with a reasonably acceptable measure of fault and apportionment of liability. *United States v. National R.R. Passenger Corp.*, 1999 WL 199659 *9, (E.D. Pa. Apr. 6, 1999). Courts do not require mathematical precision in evaluating substantive fairness:

> The settlement terms must be based upon, and roughly correlated with, some acceptable measure of comparative fault, apportioning liability among the settling parties according to rational (if necessarily imprecise) estimates of how much harm each PRP has done.

*Cannons*, 899 F.2d at 87. Courts will defer to EPA's expertise to determine what measure of comparative fault should be applied at a particular Superfund site. *Id.* "As long as the measure of comparative fault on which the settlement terms are based is not 'arbitrary, capricious, and devoid of rational basis,' the district court should uphold it." *United States v. Southeastern Pennsylvania Transp. Authority*, 235 F.3d 817, 824 (3rd Cir. 2000) (citation omitted).

Based on these considerations, the proposed Consent Decree is fair. Plaintiffs and Union Pacific exchanged discovery requests and responses, deposed key witnesses and discussed settlement to resolve the Plaintiffs' CERCLA claims. Plaintiffs, Union Pacific, and numerous third party defendants participated in mediation sessions in 2008 and 2009. All parties were represented by experienced counsel. Similar to *Cannons*, the proposed Consent Decree is the product of extended arms' length negotiations. 899 F.2d at 87 ("Given that the decrees were negotiated at arm's length among experienced counsel, and that the agency operated in good faith, the finding of procedural fairness is eminently supportable."). In determining whether a settlement had been entered into in good faith, the court should bear in mind that no one has "come forward with any evidence, or even conclusory statements, casting doubt on the good faith of the settling parties." *City of New York v. Exxon Corp.*, 697 F. Supp. 677, 693 (S.D.N.Y. 1988). Thus, the Court should conclude that the proposed Consent Decree is procedurally fair.

The settlement is also substantively fair. As discussed above, the negotiated settlement amount is based upon Union Pacific's liability at the Site after evaluating the risk of litigation posed by Union Pacific's potentially meritorious legal bases and the

continued litigation costs. The settlement amount also recovers from additional parties who entered into agreements with Union Pacific to resolve potential contribution claims against them, and by entering agreements with Union Pacific such additional parties avoid potentially costly and protracted litigation with Union Pacific. Thus, the proposed settlement is substantively fair as to all parties to the Consent Decree. Both the procedural and substantive fairness of the proposed Consent Decree are supported by the fact that no objections to the proposed Consent Decree were received during the public comment period.

**B. The Proposed Final Consent Decree is Reasonable.**

Assessing the "reasonableness" of a Decree is “a multifaceted exercise.” *Cannons*, 899 F.2d at 89. “In determining whether a consent decree is "reasonable," courts have considered the following: the nature/extent of hazards; the degree to which the remedy will adequately address the hazards; possible alternatives for remedying hazards; and the extent to which the decree furthers the goals of the statute.” *Akzo*, 949 F.2d at 1436 (citing *Cannons*, 720 F.Supp. at 1038); *see also U.S. v. Telluride Co.*, 849 F.Supp. 1400, 1403 (D. Colo. 1994) (the reasonableness of a settlement may be determined in light of whether it is technically adequate, fully compensates the public for the alleged violations, and takes into consideration the risks of litigation).

In assessing the reasonableness of a consent decree, the Court’s inquiry is “a pragmatic one, not requiring precise calculations.” *U.S. v. Charter Intern. Oil Co.*, 83 F.3d 510, 521 (1st Cir. 1996). “The question is whether the decree provides for an

efficient clean-up and adequately compensates the public for its costs, in light of the foreseeable risks of loss." *Charter Intern. Oil Co.*, 83 F.3d at 521.

The proposed Consent Decree settlement amount is based on risks associated with protracted litigation, potential defenses, and efficient resolution of the litigation relating to the Site. Response actions at the Site are complete, and interest continues to accrue on EPA's outstanding response costs. For this reason, the Plaintiffs' sought cost recovery only in order to compensate the public for the costs incurred by the Plaintiffs when cleaning up the Site. Union Pacific, with contributions from other defendants, is reimbursing a substantial amount of past response costs and future costs for EPA's five-year reviews. The Consent Decree also contains a reopener provision if new information or new conditions require an additional remedial action. Given this, the Plaintiffs have considered the facts surrounding Union Pacific's involvement at the Site and find this to be a reasonable settlement. Here again, it is important to note that no person opposed the proposed Consent Decree during the public comment period.

**C. The Proposed Consent Decree is Consistent with the Goals of CERCLA.**

The role of the Court in reviewing an environmental settlement is to determine "whether the decree comports with the goals of Congress." *Sierra Club v. Coca-Cola Corp.*, 673 F. Supp. 1555, 1556 (M.D. Fla. 1987). As recognized by the Sixth Circuit in *Akzo* and affirmed by other Circuits, "the two principal goals of CERCLA [are] ensuring prompt effective remedial action while placing the financial burden of the cleanup on the PRPs." *Akzo Coatings*, 949 F.2d at 1439; *see also In re Bell Petroleum Services, Inc.*, 3 F.3d 889, 897 (5th Cir. 1993).

While the response actions at the Site are complete, the proposed Consent Decree nonetheless serves the first goal by providing appropriate reimbursement to the Plaintiffs, who expended costs studying the Site, conducting the clean-up, reviewing its progress, and seeking reimbursement of costs from PRPs. The proposed Consent Decree is consistent with the second goal of CERCLA because it requires the settling defendants to bear a substantial portion of the cost of the environmental harm to which they contributed, "while preserving both public finances and public health" by replenishing the CERCLA Superfund and enabling those funds to be used at other sites. *Kramer*, 19 F. Supp. 2d at 289.

Accordingly, the Consent Decree represents a fair and reasonable settlement that serves the public interest by not requiring taxpayers to pay for the settling defendants' share of the costs incurred by the Plaintiffs in addressing the harm at the Site. Further, conserving the public funds by avoiding costly and protracted litigation is certainly in the public interest.

The United States has received no comments on the Consent Decree, indicating that no other party has identified facts or issues that the United States failed to consider in striking the balance between litigation and a reasonable settlement. Further, the parties to the proposed Consent Decree have agreed not to oppose the entry of the Proposed Consent decree or challenge any provision of it unless the United States decides not to go forward with the proposed Consent Decree.

Accordingly, the settlement is a fair and reasonable settlement that serves the public interest in avoiding unnecessary protracted litigation.

## V. CONCLUSION

The United States and State of Oklahoma respectfully requests that this Court enter the proposed Consent Decree by signing page 23 of the proposed Consent Decree found at Docket No. 720.

Respectfully submitted,

IGNACIA S. MORENO
Acting Assistant Attorney General
Environment and Natural Resources Division


*Cara M. Mroczek*
CARA M. MROCZEK
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611, Benjamin Franklin Station
Washington, D.C. 20044-7611
Telephone: (202) 514-1447
Fax: (202) 616-6583
Email: cara.mroczek@usdoj.gov


*P. Clayton Eubanks*
CLAYTON EUBANKS OBA#16648
Assistant Attorney General
Oklahoma Office of Attorney General
Environmental Protection Unit
313 N.E. 21st Street
Oklahoma City, OK  73105
Ph. (405) 522-8992
Fax: (405) 522-0608

OF COUNSEL:

PAM TRAVIS
USEPA REGION 6
1445 Ross Avenue
Suite 1200
*Mail Code:* 6RCS
Dallas, TX 75202-2733